COLBERN et al., *Appellants*, v. ROBINSON.

1. **Mortgage**: CREDITOR: PREFERENCE. A debtor has the right to execute a mortgage to secure a note due one creditor, although such mortgage has the effect to hinder and delay his other creditors.

2. **Security**: FRAUD. The mere fact that the security given to secure a note is more than is necessary, is, of itself, no indication of fraud.

3. **Mortgage**: EFFECT OF. A mortgage given to secure the payment of a note, will not have the effect to withdraw the property included in it from the reach of creditors, and judgment creditors, whose judgments against such mortgaged property were rendered before the maturity of the note secured by the mortgage, and before the sale thereunder, may redeem the property from the mortgage, or protect themselves by bidding at the sale, or enjoin the sale until the validity of the mortgage debt can be ascertained.

4. **Fraud**: CREDITORS. Although a debtor has been overreached and defrauded in a business transaction, this is not a matter of which his creditors can take advantage.

*Appeal from Johnson Circuit Court.*—HON. NOAH M. GIVAN, Judge.

AFFIRMED.

*E. A. Nickerson, G. N. Elliott* and *Comingo & Slover* for appellants.

The note and deed of trust were fraudulent and void,

because given for a sum largely in excess of the amount actually due from Holwell to respondent, and for the purpose of hindering and delaying creditors. Kerr on Fraud, 196, note, 192, 195 ; Bump on Fraud. Convey., 85, 239, 272 ; *Sands v. Codwin*, 4 John. 585 ; *Curtis v. Leavitt*, 15 N. Y. 9 ; *Small v. Beachly*, 2 Vt. 602 ; *Allen v. Berry*, 50 Mo. 90 ; *Pettibone v. Stevens*, 15 Conn. 19 ; *Young v. Wilson*, 24 Barb. 510 ; *Armstrong v. Winfrey*, 61 Mo. 358. If the deed of trust is void for fraud, there can be no re-imbursement, and the title of plaintiff must be quieted. Bump on Fraud, 573 ; *Borband v. Walker*, 7 Ala. 269 ; *Butts v. Peacock*, 23 Wis. 359 ; *Webb v. Brown*, 3 Ohio St. 246 ; *Bean v. Smith*, 2 Mason 296 ; *Jackson v. Marshall*, 3 Am. Dec. 695 ; *Bigelow v. Stinger*, 40 Mo. 195 ; *Pilling v. Otis*, 13 Wis. 495.

*John J. Cockrell* and *O. L. Houts* for respondent.

A deed executed by a debtor to a creditor, in good faith, is good as to the whole world, even though there be other creditors, and they be neither secured nor paid. A fraud upon creditors consists in the intention to prevent them from receiving their just dues by an act which withdraws the property of the debtor from their reach. This is true as is the converse, that where the necessary consequences of a debtor's acts are to deprive his creditors of their debts they are fraudulent, however pure his motives. Bump on Fraud. Convey., (2 Ed.) pp. 19, 22, 23, 24, 25, 26. The creditors of a party defrauded have no right even though the fraud has the effect to diminish his means of paying them, to look into such fraud and unravel it. The right is a personal one. Bump on Fraud. Convey., (2 Ed.) pp. 17 18 ; *Eatin v. Perry*, 29 Mo. 96. The testimony of the debtor as to a conveyance, is merely his opinion of the transaction, and is of little value. The deed must be tested by rules established by law and experience. *Potter v. McDowell*, 31 Mo. 62, 74 ; Bump on Fraud. Convey., (2 Ed.) pp. 574, 575. In equitable cases where there is substantial evidence to

support a finding, the appellate court will not enquire into its weight. *Hedges v. Black*, 76 Mo. 537.

HOUGH, C. J.—On the 2nd day of August, 1877, James Holwell executed a deed of trust conveying to I. W. Rogers, as trustee, certain land in Johnson county to secure the payment of a promisory note for the sum of $2,483, made by said Holwell to the defendant, and payable on the 2nd day of August, 1878. The real estate covered by the trust deed was worth about $10,000. Holwell also owned at that time 120 acres of land in Henry county, and personal property worth nearly $4,000, and owed in addition to the note secured by the trust deed, other debts amounting to $2,500.

On the 18th of June, 1878, the Warrensburg Savings Bank recovered two judgments against Holwell; one for $375 and one for $379.13; and on June 19th, 1878, the Johnson County Savings Bank recovered judgment against Holwell for $515.95. Under the two judgments first mentioned, the real estate covered by the deed of trust was sold to E. A. Nickerson, for the sum of $10.50, and passed by sundry mesne conveyances to the plaintiff, the Warrensburg Bank; and under the judgment last mentioned, said real estate was also sold to the plaintiff, Colbern, for the sum of $9. On the 9th of Sept., 1878, the defendant sold the land under the deed of trust, and purchased the same at said sale. In Nov., 1878, the plaintiffs instituted this suit to set aside the trust deed and the sale thereunder, and to divest the defendant of title and invest plaintiffs therewith, on the ground that said trust deed was fraudulent and void as to creditors. The petition alleges that the note secured by the deed of trust was for the sum of $1,368.38 in excess of the real indebtedness of Holwell to the defendant when said note and deed were executed; and, after setting forth that said Holwell was enfeebled in mind and diseased in body, and greatly disturbed and distressed by reason of certain family dissensions which

culminated in an assault upon his wife, proceeds as follows: "Your petitioners further charge that at the date of the execution of said trust deed the defendant well knew the said Holwell was so far impaired in the faculties of his mind as to be mentally incapable of the government of himself and the management of his own affairs and business, and was so physically weak and melancholy and despondent, by reason of the disease with which he was then afflicted, and the difficulty with his wife, and the prospect of his indictment and punishment, as steadily kept before his mind and pressed upon him by said defendant, that he was entirely in the power of said Robinson, and executed and signed whatever papers he was directed to by said defendant, without any active memory in the premises, or exercising any reason or judgment in the matter.

"Your petitioners charge that the flattery, false pretense, cunning, undue means, tricks and subterfuge brought to bear upon the said Holwell by said defendant, in connection with the then known bodily and mental disease of the said Holwell rendered him powerless in the hands of defendant to protect himself and to transact any business save as directed by the said defendant."

After thus stating facts which, in connection with other matters alleged, would afford sufficient ground for a suit by Holwell to set aside said deed of trust as to excess of said note over his real indebtedness, the petition, at some risk of inconsistency, proceeds as follows ; "Your petitioners further charge that although it is true that at the time of and prior to the execution of said deed of trust the said defendant well knew that said Holwell was then a man of weak understanding; was harassed with his nervousness, in great despondency and was overwhelmed with calamities and was of so great weakness of mind as to be unable to guard against imposition or resist importunity and undue influence, yet the said defendant, knowing that the said Holwell confided in him and acted upon his advice and opinion, combined and confederated with the said Hol-

well and induced him to execute to him said fraudulent deed of trust, with the purport and intent on the part of said defendant and said Holwell to hinder, defraud and delay the creditors of said Holwell out of their lawful actions, damages, forfeitures, debts and demands and to give the said defendant an unjust, corrupt and fraudulent advantage and preference, and to defraud and cheat the said Johnson County and Warrensburg Banks; and the plaintiffs charge that said Holwell fully and well knowing that said acts were corrupt and fraudulent, and intended to give the said defendant a corrupt and fraudulent advantage, and to cheat and defraud said banks out of the amounts due them; yet the said Holwell consented thereto and aided, assisted and contrived with said defendant to so fraudulently incumber his property as aforesaid, with the intent to cheat and defraud said banks; and plaintiffs charge that said deed of trust and all conveyances thereunder are clearly and utterly void, and should be held for naught." All of the foregoing allegations were put in issue by the defendant's answer. The circuit court found the issues for the defendant and dismissed the petition.

The testimony is quite voluminous, and no principles of law would be elucidated by stating it in detail. Plaintiffs' counsel, in an elaborate pains taking examination of the numerous business transactions between Holwell and defendant, have endeavored to show that the note was for a sum largely in excess of the amount actually due from Holwell to him, and to deduce from this alleged fictitious indebtedness and certain statements from Holwell, the conclusion that the note and mortgage, as we shall hereafter term the trust deed, were made to hinder and delay the other creditors of Holwell. We have read the testimony with great care, and it falls far short of convincing us that the amount secured by the mortgage was in excess of the real indebtedness of Holwell to the defendant.

Holwell's testimony, which is chiefly relied on to establish the excess in the note, and the fraudulent purpose

35—80

in executing the mortgage, is confused and contradictory, and, therefore, far from satisfactory. Being the party who executed these instruments, his testimony, in order to be made the basis of a decree, should be consistent, clear and convincing. The detailed account of their various transactions given by the defendant, and the admissions of Holwell to various parties, from some of whom he sought to borrow money to pay this very note and other debts, and the direct testimony of two witnesses who computed the amount of, and interest on, the several obligations held by the defendant, before and at the time they were consolidated in the note of August 2nd, 1877, establish, to our satisfaction, that said note correctly represented the amount then due from Holwell to the defendant. As the note correctly represented the amount due at the time, Holwell had an undoubted right to secure its payment by the execution of the mortgage in question, even though the effect of the mortgage, which is not conceded, was to hinder or delay his other creditors. *Shelley v. Boothe,* 73 Mo. 74. But there is no sufficient evidence of any intent on the part of Holwell to delay or defraud his creditors. One of the strongest statements, perhaps, of Holwell on this subject is the following: "I gave him the deed of trust so as to secure him to the amount that I owed him; and in the second part I done it to secure my property from my wife and her father, that would hold it against him if he made a break on me and put me into the penitentiary, and save it for my children; it was not from my creditors altogether that I done it, because what debts I owed I was able to meet at any time. There were no debts pressing me. There weren't a dollar pressing me." Elsewhere in his deposition, he states that he would not have executed the mortgage but for the difficulty with his wife, and the impression made upon his mind that his wife and her father would endeavor to take his property from him. There are strong indications that the defendant fostered this idea in the mind of Holwell, but we have failed to discover any

good ground for holding that the defendant had knowledge of, or participated in any design on the part of Holwell to defraud his creditors, even if it be conceded that Holwell, himself, entertained such a purpose. The security given was, it is true, more than was necessary to secure the note; but this of itself amounts to nothing. Holwell was, undoubtedly, under a morbid fear of penal consequences, and loss of property, on account of his assault on his wife, and thought, perhaps, by including all his real property in Johnson county in the mortgage, he would thereby secure it to himself and to his children. The defendant's mortgage did not have the effect of withdrawing the property included in it from the reach of creditors. It was subject to the judgments under which the plaintiffs claim, they having been rendered nearly two months before the maturity of defendant's note and nearly three months before the sale. They could have redeemed the land from the defendant's mortgage, (Jones on Mortg., § 1069,) or protected themselves by bidding at the sale under the mortgage, or enjoined the sale until the validity of the defendant's debt was ascertained; but they have chosen a different course. Colbern, one of the plaintiffs, held a junior incumbrance and refused to redeem from the defendant's claim. Besides, there was personal property amply sufficient to satisfy their judgments at the time they directed their executions to be levied on the land in question. These facts have a tendency to invest the plaintiffs' claim with something of a speculative character, and to deprive it of the commendatory aspect of a simple endeavor to collect the amount of their debt.

The testimony shows that $1,000 of the amount for which the note was given was money borrowed from defendant by Holwell for the purpose, as he states in his testimony, of extricating himself from the trouble he was in on account of the assault upon his wife. $550 of this sum is clearly shown to have been paid by the defendant, according to the directions of Holwell, and for his benefit. The

remaining $450, according to Holwell, was never received by him, or appropriated to any use designated by him, but was misapplied by the defendant for the benefit of himself and others. There is a conflict of testimony as to this. But, even if Holwell had been overreached and defrauded to the extent stated, that is not a matter of which his creditors could take advantage. This is well settled. Bump on Fraud. Con., 65. Holwell may have been entitled to some relief as to this matter; and the record shows that on the 1st of August, 1878, he instituted proceedings to set aside the mortgage given to the defendant. The defendant docs not appear to have been enjoined from selling, however, and, after the sale took place, Holwell and his wife joined in a deed to the defendant of the premises sold in consideration of the sum of $1,500 paid to Mrs. Holwell and $150 paid to her son for wheat sowed by him and a lease of the premises until the February following.

We are of opinion that the circuit court properly disposed of the case and its judgment will be affirmed. All concur, except SHERWOOD, J. who dissents.