McKinney, Hundley & Walker v. Wade.

McKinney, Hundley & Walker, Respondents, v.
Martin Wade, Appellant.

Kansas City Court of Appeals, January 5, 1891.

1. **Fraudulent Conveyances**: MORTGAGE OF STOCK IN TRADE: POSSESSION : INTENT TO DEFRAUD: EVIDENCE : INSTRUCTION. Though the mortgagee goes into possession of the mortgaged stock of goods, yet, where the evidence discloses declarations of his agent to protect the mortgagor against other creditors, it is error not to submit by proper instruction to the jury the question of the purpose of the parties to cover up the property and prevent other creditors from subjecting it to the payment of their debts. Though possession may cure a mortgage made in good faith but fraudulent only by force of law, yet, where the intent of the parties is to hinder, delay or defraud creditors, possession can make no difference.

2. ——— : TOO MUCH PROPERTY: SECURITY : PAYMENT : BADGE OF FRAUD. The bare fact that more goods are included in the mortgage than will amply secure the mortgage debt will not render it fraudulent, as the property is not taken in payment, but as a security, and the rule about taking more than is reasonably sufficient does not apply. Such fact can go to the jury with others as bearing on the intention of the parties, since a creditor cannot take more than sufficient to secure his claim with the design to hinder and delay others.

*Appeal from the Nodaway Circuit Court.*—Hon. Cyrus A. Anthony, Judge.

Reversed and remanded.

*E. S. Janes* and *E. A. Vinsonhaler*, for appellant.

(1) Refusing instruction, numbered 1, asked by appellant, and giving instruction, numbered 1, for respondents was error. The evidence of Black was positive that the object of said mortgage was to hinder and

delay his creditors, and that respondents suggested and agreed thereto. *Crow v. Beardsley*, 68 Mo. 435, at bottom of p. 440 ; *Wilburn v. Railroad*, 36 Mo. App. 203, at pp. 210, 211 and 212 ; *Rysdon v. Trumbo*, 52 Mo. 35 ; *Chappell v. Allen*, 38 Mo. 213, at p. 222 ; *Potter v. McDowell*, 31 Mo. 62, at p. 74 ; *McNichols v. Rubleman*, 13 Mo. App. 515, at p. 520 ; *Doan v. Railroad*, 38 Mo. App. 408, at p. 418 ; *Hisey v. Goodwin*, 2 S. W. Rep. (Mo.) 566 ; *Mfg. Co. v. Steele & Walker*, 36 Mo. App. 496, at pp. 503, 504, and cases cited. But suppose appellant had no direct testimony of respondents' design to aid Black, still there is abundant evidence that Black meant to hinder and delay his creditors, and that respondents had notice thereof, and "their sympathy in the object must be inferred." *Bob v. Woodward*, 50 Mo. 95, at bottom of p. 98. ( 2 ) While a debtor may prefer a creditor, yet he is not allowed to transfer more than is necessary to pay or secure such creditor,—such act is itself a badge of fraud. *Morgan v. Wood*, 38 Mo. App. 255, at p. 262, instruction 4 ; *Hanna v. Finley*, 33 Mo. App. 645, at p. 651 ; *Distilling Co. v. Vosemeyer*, 25 Mo. App. 578 ; *Shelly v. Booth*, 73 Mo. 74, at p. 77 ; *Freybe v. Tiernan*, 13 S. W. Rep. 370. ( 3 ) We think it doubtful whether any authority can be found that possession taken by a chattel mortgagee covers a case of actual fraud. There are cases that decide possession covers constructive fraud, and *Koppleman Furniture Co. v. Frick*, 39 Mo. App. 146, so decides ; but at bottom of page 153, the court says that : "Unless there was actual or intentional fraud in the execution of the mortgage the judgment of the circuit court will have to be affirmed,"— showing that possession will not cure actual fraud. We insist that there was "actual and intentional fraud in the execution of the mortgage" in this case.

*Johnston & Craig* and *Thomas & Dowe*, for respondents.

(1) The testimony of Black and Judd, quoted in our statement, has no tendency whatever to show fraud on the part of McKinney, Hundley & Walker, whether considered by itself or in connection with all the facts and circumstances in evidence. *Hardwick v. Jones*, 65 Mo. 54, 60; *Hardin v. Phelps*, 51 Mo. 332; *Chambers v. Rinkle*, 76 Mo. 538. (2) Where all the facts detailed consist as well with honesty and fair dealing as with fraud, the charge of fraud is not proved. *Ames v. Gilmore*, 59 Mo. 537; *Rumbolds v. Parr*, 51 Mo. 592. (3) If the mortgagee, with the consent of the mortgagor, takes possession under a mortgage fraudulent in law, because of an agreement that the mortgagor might remain in possession and sell in the usual course of trade, before the levy of process thereon, he is entitled to hold the mortgaged property against attaching or execution creditors. *Dobyns v. Myer*, 95 Mo. 132; *Furniture Co. v. Frick*, 39 Mo. App. 146. (4) The fact that the security given to secure the payment of a note is more than is necessary, is no indication of fraud. *Colburn v. Robinson*, 80 Mo. 541 and 547. (5) If a mortgagee in a chattel mortgage which, covers property in excess of what is required to secure his demand, unreasonably delays foreclosure, a court of equity will afford an adequate remedy to the unsecured creditors who have put their claims in judgment and sued out execution. *Shultz v. Jerrard*, 3 Atl. Rep. 265; *Woodcock v. Hart*, 1 Paige, 185. (6) The right to dispose of one's property is not terminated by indebtedness or insolvency. *Dougherty v. Cooper*, 77 Mo. 528, 531.

ELLISON, J.—Plaintiffs are the mortgagees of one Lewis Black, and defendant is a constable, who seized the mortgaged goods, taking them from the possession

of the mortgagees under various writs of attachment. Plaintiffs brought this action of replevin and recovered below. The facts are, substantially, these : Lewis Black was a retail merchant, in Nodaway county, and was insolvent, owing plaintiffs and other wholesale dealers. He sold, or traded, his stock estimated at $1,800, to one Judd, who paid him in part and took possession. Black then, on March 11, went to St. Joseph, Missouri, where plaintiffs did business and informed them of his condition ; at their request, he executed to them, on that day, a note, antedating it the eighth, and, to secure this note, he executed a chattel mortgage on the stock of goods, giving it the true date. Plaintiff's agent then went with him to Nodaway county and took possession of the stock, Judd giving way after being secured for what he had paid on the goods and being protected against liability on a garnishment which had, in the meantime, been served upon him.

Black testified, among other things, that he "bought some goods of C. H. Fargo & Co., and some of these goods were in the store. I had paid some money on this bill ; went to St. Joseph, Sunday, and met Enright on Monday ; told him that I had not any money to pay him, and that there were parties about to attach me. He said he would let me have all the goods I wanted ; let me run on ; put me on my feet again, and go on and sell all the goods I wanted ; that he would go up with me and keep those fellows off ; that they couldn't buck him. I told him I was in debt some ; that Judd had bought me out. The constable had not taken possession of the goods when I went to St. Joseph, but when we came back, on Monday, he was in possession. In the interview with Judd we estimated the invoice at $1,800. I went to St. Joseph to see my creditors. I told Mr. Enright I was in debt, but did not tell him how much. I did not tell him who my creditors were. I think I understood the part of the mortgage which

the attorneys there read to me. When I sold out to Judd, previously, we made the inventory from bills that were there. Judd was to pay me an invoice price in horses and land."

Judd testified that, "Enright came into the store Monday evening, and said he had a mortgage upon the stock and store. I told him I had bought the stock; he said that his house could get it any way; that they could lose a thousand or so dollars getting it and not lose any sleep over it. I told him that I had already a couple of horses in it, and could spare several more and not lose much sleep; but told him, however, that if he would pay me what I already had in it, and also for my and my brother's time and expenses, and settle the garnishee matter that was hanging over me on account of some other creditors, that I would step down and out. He said that I could take the notes and accounts as collateral, and that Lewis Black would hire my brother, and he could collect them. I told him that Black would not be in possession after the mortgagees had got possession; but Black, in the presence of Enright, said he would continue in business. Mr. C. H. Black, clerk of plaintiffs, came up the next evening, and, after plaintiff got possession, kept the store for them, and, when he was away, left Lewis Black in possession. I found out, at supper table, Saturday night, that R. T. Davis had issued an attachment, and I was garnished by them. They sold goods at retail for about three months; then sold the balance at public auction for forty-nine and one-fourth cents on the dollar to me, which amounted to $727.30."

The court refused to instruct the jury as follows for defendant: "1. If the jury believe that plaintiffs, by their agent, when the mortgage in evidence was given, agreed with said Lewis Black, that he (Black) might retain possession of the goods so mortgaged, and the purpose of both plaintiffs and said Black was to cover up said property and prevent the other creditors of said

Black from subjecting same to the payment of their debts, then such mortgage is void, and you will find for defendant."

The instruction was justified by the testimony quoted, considered in connection with the entire case. It was more than a mere *scintilla* of evidence, and the defendant was entitled to the judgment of the jury on its force. Judging from brief of counsel, the instruction was perhaps refused for the reason that plaintiff took possession under the mortgage. It is true it has been held by the appellate courts of this state that a fraudulent mortgage is cured by possession being afterwards taken, before other rights intervened. But these cases are when the mortgage was made in good faith in point of intent of the parties, and was fraudulent only by force of law. If, however, the object of the parties to a mortgage is to hinder, delay or defraud the creditors of the mortgagor it, of course, can make no difference that possession is taken under the mortgage. Here, the effect of the declaration of plaintiff's agent was that he would protect the mortgagor against other creditors. This, in connection with the testimony of Judd, and antedating the note so as to have condition broken at time of execution, was amply sufficient to be hypothecated to the jury.

We will add, since the question seems to be raised, that the bare fact, that more goods are included in a mortgage than will amply secure the mortgage debt, will not render the mortgage fraudulent. *Coleman v. Robertson*, 80 Mo. 541. The property is not taken in payment of a debt; it is merely a security and the rule applicable where the creditor takes more than reasonably sufficient in absolute payment does not apply. Such facts, connected with other facts may, however, be said to be a circumstance of fraud admissible in evidence, and though alone insufficient to characterize the transaction, yet, connected with other facts and circumstances, it should receive its proper consideration in

determining the intention of the parties. For, though a creditor may take more than is sufficient to secure his claim, he cannot do so with the design that it shall operate to hinder and delay other creditors. Bump on Fraud. Con. 46.

The judgment is reversed, and the cause is remanded. All concur.