## ST. LOUIS AND THE KANSAS CITY

# COURTS OF APPEALS

AT THE

## OCTOBER TERM, 1899.

*(Continued from Volume 81.)*

PETERS SHOE COMPANY et al., Respondents, v. RICH-ARD T. ARNOLD et al., Appellants.

Kansas City Court of Appeals, December 4, 1899.

1. **Fraudulent Conveyances: USURY: SUBSEQUENT CORREC-TION.** Although the debt secured by a mortgage be usurious and therefore invalidating the mortgage, yet the parties may repudiate such usury and correct the mistake by proper agreement.

2. ———: **FICTITIOUS DEBT: SUBSEQUENT CORRECTION.** Where there is a fictitious element in a debt secured by a mortgage, the parties thereto may, prior to the intervening rights of creditors by a subsequent agreement purge the action of such fraud.

3. ———: **BUYING DEBTS OF GRANTOR: CREDITOR'S SPECIFIC RIGHT: EQUITY.** The fact that the mortgagee with the proceeds of sale bought other debts of the mortgagor prior to an unsecured creditor's obtaining judgment, will not render the mortgage fraudulent since no creditor can be delayed until he has a specific right to satisfaction out of property withdrawn from his reach, and, until such event, equity can not interfere as the creditor still has his remedy at law.

VOL. 82 app—1 (1)

Peters Shoe Co. v. Arnold.

Appeal from the Nodaway Circuit Court.—*Hon. C. A. Anthony*, Judge.

REVERSED.

*W. C. Ellison* for appellants.

(1) The first finding is that there was fraud because McIninch took possession of the goods and used some of the proceeds of the sale thereof, with Arnold's consent, to pay debts not included in the mortgage. What if McIninch and Arnold did do this? Had not Arnold a right to prefer other creditors? This had been accomplished before respondents brought suit. Who but the mortgage creditors had a right to complain? When this was done, respondents had no special claim to or on the goods, but were in the position of a general creditor. (2) Another finding of fraud, in substance, is that McIninch was endeavoring to collect his just claims and that in doing so, he and Arnold were hindering other creditors. This needs no comment. (3) In conclusion, we ask the court to contrast the finding and decree with the allegations of the petition. The finding and decree is not responsive to a single allegation of the petition. The petition, in truth, states no cause of action at all. (4) Assuming that the $2,500 note was usurious in that its terms authorized the interest to be compounded quarterly, it is an admitted fact that no payment was actually made of interest thus compounded, and it is claimed by appellants that the deed of trust, in the provision hereinbefore referred to in regard to the interest, purged the transaction of its alleged usurious features. 27 Am. and Eng. Ency. of Law, p. 964, *et seq.*

*Ira K. Alderman* and *E. A. Vinsonhaler* for respondents.

(1) Where an instrument by honest mistake fails to express the contract of the parties, a court of equity would

correct it, and so may the parties; but equity does not aid parties guilty of fraud, nor approve their act when they attempt its correction. Dry Goods Co. v. Grocery Co., 68 Mo. App. 290, 297. As in cases where the instrument is tainted with constructive fraud, possession taken cures the defect, but not when there is actual fraud. McKinney v. Wade, 43 Mo. App. 152. (2) Our statute renders chattel mortgages securing contracts tainted with usury absolutely void. Session Acts, 1891, p. 170. When such statute is in force, no subsequent purgation will render such security valid. Johnson v. Griffin, 55 Ga. 691; 27 Am. and Eng. Ency. of Law, 967; Jackson v. Cassidy, 68 Texas, 282.

ELLISON, J.—This proceeding is in equity praying that a receiver be appointed to take charge of a lot of merchandise and for an accounting. Plaintiffs obtained a decree and defendants appealed.

Defendant Arnold was engaged in the mercantile business and was the owner of a stock of merchandise. He was indebted to these plaintiffs and various other parties, among them being defendant McIninch. On April 20, 1897, he executed to McIninch a chattel mortgage on the stock of goods securing payment to the latter of two promissory notes, one for $2,500 and the other for $600. And also securing the payment of another note executed to him for $1,350. No part of the latter note was owing to McIninch, but something more than $1,000 of it was owing to other creditors of Arnold, who are also defendants herein, leaving near $350 as fictitious indebtedness.

It is conceded that there was evidence tending to show that this fictitious portion was inserted with intent to hinder, delay or defraud other creditors. Though there was evidence tending to show that the act was done with fair intent—that not having the data at hand at the time the mortgage was executed, to show the amount due these other creditors, the

sum of $1,350 was fixed upon with the understanding that if it should turn out to be too much, the excess should be credited. In forming our conclusion as to the merits of the case we shall concede that the excess was known to be fictitious and was added with a view to hinder and delay other creditors. The note for $2,500 by its terms drew usurious interest, though none, in fact, was collected. McIninch recorded the mortgage, closed the store, took an invoice and posted a notice that: "This store is closed by mortgagee for invoice." When opened for business a muslin sign, 30 or 40 feet long, was put up in the mortgagee's name. It appears that handbills were also circulated announcing the change. On the other hand defendant Arnold and his former employees were kept in McIninch's employment and had practical charge of the store, though McIninch was also there from time to time and sale moneys amounting to $1,016 were deposited in his name, and applied by him in full discharge of the $600 note and to the purchase by him of some other claims against Arnold by agreement with the latter. A small sum still remaining, he applied it as a credit on the note for $2,500.

Afterwards, on May 28, 1897, Arnold and McIninch becoming aware that the note for $2,500 was usurious and that the debts for which the $1,350 was included in the mortgage did not amount to that sum, as before stated, the former executed a chattel deed of trust on the same property in order to eliminate the usurious feature of the $2,500 note and to insert separately the exact sum due the creditors, for which the note for $1,350 had been given in the first mortgage, thus relieving the transaction of the fictitious indebtedness. This chattel deed was executed to W. T. Whiteside as trustee and he went into possession.

Near six weeks after the execution of this deed of trust, these plaintiffs obtained judgment on their claims before a justice of the peace and shortly thereafter, on July 21, begun the present proceedings. On the twenty-eighth of July,

1897, the parties made and filed the following agreement: "It is stipulated and agreed between the plaintiffs and defendants to the above entitled cause as follows, to wit:

"That the defendant, W. T. Whiteside, trustee under a certain deed of trust executed by the defendant, Richard T. Arnold, as grantor, on or about the 28th day of May, 1897, shall continue in the possession of the property conveyed in said deed of trust and may sell and dispose of the same under the terms and conditions thereof.

"That the said W. T. Whiteside shall, until the final determination of this suit, retain in his possession sufficient of the proceeds which have come into his hands, or which he may hereafter receive in the execution of his trust to cover the amounts of the claims of the several plaintiffs as set up in the petition, together with the costs of this action should the final judgment be in favor of the plaintiffs.

"The plaintiffs upon their part in consideration of the foregoing agree to withdraw their application for a temporary receiver and to make no further application for the appointment of a receiver during the pendency of this action.

"Nothing herein is to be construed as affecting in any manner the rights of the parties to this action upon the final hearing thereof."

An examination of the briefs and argument of the respective counsel discloses that there is practically no substantial difference between them as to the facts which have any application to the controversy. There are three main points of attack made by plaintiffs. First, that there was usury in the $2,500 note given by Arnold to McIninch. Second, that a part of the $1,300 note was not a *bona fide* indebtedness against Arnold. Third, that a portion of the proceeds of the sale made by McIninch while holding under the original chattel mortgage was applied, with Arnold's consent, to the purchase, or payment of claims of other creditors who were not included in the mortgage.

1.    In regard to the first proposition, the usury consisted in compounding a legal rate (8 per cent) more than once a year, viz.: quarterly. This was corrected in the subsequent chattel deed of trust by reciting that it was only intended to compound annually and "that said interest should be and shall be compounded annually." Without going into the question whether plaintiffs have the legal right to raise the question of usury (on which subject see American Rubber Co. v. Wilson, 55 Mo. App. 656) and assuming they have that right, it is clear that it can not avail them for the reason that the parties to the transaction before plaintiff begun this proceeding, wiped out the usury by the stipulation in the deed of trust. While the taint of usury will follow an indebtedness through all its renewals however remote, yet the parties concerned are not incapacitated from legalizing the illegal contract by withdrawing from it the element which made it unlawful. This might be done in any appropriate manner the parties agree upon, the usury being refunded by the one and accepted by the other, when it has been paid. In this case no usury had in fact been collected and therefore there is nothing to refund. But that the contract may be purged of its unlawful element is well established. "Courts of justice will not shut the door in the face of the penitent; and hence it has been decided that although a contract be in its inception usurious, a subsequent agreement to free it from the illegal incident shall make it good." DeWolf v. Johnson, 10 Wheat. 392; Taylor v. Morris, 22 N. J. Eq. 609; Warwick v. Dawes, 26 N. J. Eq. 548. The cases of Johnson v. Griffin, 55 Ga. 691, and Jackson v. Cassiday, 68 Texas, 282, are not in point.

2.    As to the second point: The parties inserted in the deed of trust the proper sum due each creditor by name and amount before these plaintiffs could have been in any manner affected. They had not obtained their original judgments and did not institute this proceeding for some time afterwards. The position taken by plaintiffs is tantamount to an assertion

that if a debtor once conveys in fraud he can never correct it, even though with the consent of his fraudulent grantee. We think the position is unsound. Sir Edward Coke did say that where there was actual fraud nothing afterwards can "anyways salve and amend the matter." But it is stated in 2 Bigelow on Fraud, 408, that the position thus asserted should not be accepted too broadly—that a limitation of necessity must be allowed, "where after the conveyance has been made and before any steps have been taken against it by the creditor, a reconveyance is made; this is proper, and there is nothing now for the statute to operate upon, considered *civiliter*. The same would be true if the grantee should repudiate the transaction entirely, and then obtain the property by lawful treaty." There are cases where the wrongdoer has attempted to abandon the fraud after a creditor's right has intervened by attachment, or other lien and he has always been denied the right. But the strong implication in each of these adjudications is that if he had repented before the assertion of an intervening right he would have been allowed to do so. Sutherland v. Bradner, 116 N. Y. 410; Farrow v. Hays, 51 Md. 498; Whittaker v. Williams, 20 Conn. 98; Smith v. Conkwright, 28 Minn. 23; Porter v. Williams, 9 N. Y. 152. That fraud may be purged by the repentance of the parties to it before the creditor intervenes is supported by every good reason, and it has been frequently decided. Thomas v. Goodwin, 12 Mass. 140; Hutchins v. Sprague, 4 N. H. 469; Bank v. Haskins, 3 Met. 332; Merrill v. Englesby, 28 Vt. 150; Ingraham v. Wheeler, 6 Conn. 277. The case last cited was much like the one at bar. In that case there was an assignment by the debtor to a third party, directing the payment of some creditors in full and of others upon condition that they would accept a certain per cent of their claims in full settlement. If not they should not be paid anything. This deed was void as a fraud upon the creditors thus attempted to be forced to settlement and as providing for a portion of the

property for the assignors' benefit in case it was not accepted by the creditors. Afterwards he concluded not to undertake to enforce the fraudulent portion of his deed and made a new assignment eliminating the fraudulent portions of the first. Afterwards a creditor attached and the court held the new assignment was not tainted with the fraud of the first and that it was superior to the attachment.

The case of Carll v. Emery, 148 Mass. 32, while not like the one under consideration in its facts is yet enough like it in principle, to serve as authority for defendant's position. There a debtor transferred property to another in fraud of his creditors of which the transferee had knowledge. Afterwards he gave notice to the transferee of a change of purpose and an intention to use the property for his creditors. The court said that he might "recede from the transaction on notice to the other party, repossess himself of his property, and devote it to its proper purposes." And "That a fraudulent transaction may be purged of the fraud by the subsequent action of the parties is well settled."

Counsels' brief concedes the position that constructive fraud may be purged, but deny that actual fraud can be, and cite the cases of Dry Goods Co. v. Grocery Co., 68 Mo. App. 290, and McKinney v. Wade, 43 Mo. App. 152. We can not find where those cases apply to the question, and feel confident that the law allows a *locus poenitentiae* to the fraudulent transgressor at any time before the intervention of interested third parties.

3. Much of what has been already said applies to the third proposition. After eliminating that portion of the note for $1,300 included in the first mortgage which was fictitious nothing remained but *bona fide* claims. The debts paid out of a portion of the proceeds of sales made before the deed of trust was executed were just claims owing by Arnold. They were paid while plaintiffs were mere general creditors and before they had taken any action in the premises. It was no

Smith v. Dold Packing Co.

concern of plaintiffs. They had not interfered. More than this, they could not have interfered before reducing their claims to judgment. Wait on Fraudulent Conv., secs. 52, 73, 347. "No creditor can be said to be delayed, hindered or defrauded by any conveyance until some property out of which he has a specific right to be satisfied is withdrawn from his reach by a fraudulent conveyance." Bump on Fraudulent Conv., secs. 535,538. Equity is not the forum in the first instance for the collection of simple contract debts. Ib. And it may be said generally of this proceeding that after all that plaintiffs have shown to be true, they had their full remedy in the ordinary procedure at law.

The foregoing views make it unnecessary to consider other suggestions found in briefs. The judgment should have been for defendants instead of plaintiffs and it is accordingly reversed. The other judges concur.