HENRY F. SALLER, by his next friend, Respondent, v, FRIEDMAN BROTHERS SHOE COMPANY, Appellant.

St. Louis Court of Appeals, November 5, 1907.

1. **JURORS: Examination on Voir Dire.** In order to gain information to guide him in making peremptory challenges, counsel, in examining jurors on their voir dire, have a right to ask such questions as may be necessary to ascertain whether or not a juror's social or business relations are such as would prejudice him in the case.

2. **MASTER AND SERVANT: Minors: Negligence: Jury Question.** In an action by a boy sixteen years old against his employer for damages caused by injury to the plaintiff in operating a machine, where it was shown that the machine when operated slowly could be operated without danger but when it was operated very rapidly there was danger of such injury as the plaintiff received, and that the defendant's foreman approached the plaintiff while operating the machine and ordered him to "hurry up" and "get a move" on him, in such a way as to frighten the plaintiff and cause him to operate the machine too rapidly thereby causing the injury, the question of defendant's negligence was properly submitted to the jury.

3. ———: ———: **Assumption of Risk: Contributory Negligence.** Children are not expected to appreciate the ordinary risks incident to the operation of machines, as adults are, and do not assume the ordinary risks of employment about dangerous machines or such risk as they do not perceive and against which they are not warned. Where a boy of sixteen years employed in a factory in operating a machine, with the operation of which he was inexperienced, was ordered to operate it rapidly in such a way that it was dangerous, whether he assumed the risk of operating it in that way or whether he was guilty of contributory negligence in doing so, were questions for the jury.

4. ———: ———: **Custom.** In an action by a minor against his employer for injuries received while operating a machine, after the introduction of evidence to show that the machine causing

the injury was of a kind in common use, it was not error to exclude evidence to show that a boy of plaintiff's age, size and capacity commonly operated such machines; such evidence would be to apply to boys the presumption arising from the common use of the machine; it is not the law that the capacity of any individual boy may be measured by a custom adopted by the employers of the boys.

5. ————: ————: Instruction. In an action by a minor against his employer for injuries received while operating a machine for his employer, in instructions to the jury it was proper to permit a finding that the defendant's foreman was negligent in commanding the plaintiff to "hurry up" and "get a move" on him, in such a way as to cause plaintiff to operate the machine in a dangerous manner, without instructing the plaintiff so that he would comprehend the danger connected with the operation of the machine in that manner, and it was also proper to submit to the jury the question whether the plaintiff by reason of his inexperience did not comprehend the danger in operating the machine.

6. ————: ————: ————: Contributory Negligence. And in such case it was not error to refuse an instruction asked by the defendant that if the danger was open and obvious to a person of ordinary prudence, the plaintiff was guilty of contributory negligence in operating it. The fact that the danger was obvious did not relieve the master of the duty of instructing a youthful employee how to avoid it.

7. PERSONAL INJURIES: Excessive Verdict. In an action for personal injuries where the plaintiff, a youth sixteen years old, lost the index and middle fingers of his right hand and suffered great pain for considerable time, a verdict for $3000 was not excessive.

Appeal from St. Louis City Circuit Court.—*Hon. Walter B. Douglas,* Judge.

AFFIRMED.

*McKeighan & Watts* and *Wm. R. Gentry* for appellant.

(1) The court erred in overruling the defendant's demurrer to the evidence, (a) because no negligence was shown on the part of the defendant; (b) because plain-

tiff's own testimony showed that he assumed the risk of any dangers connected with the operation of the machine in question; and (c) because plaintiff's evidence showed that he was guilty of contributory negligence. Ziegenmeyer v. Goetz, L. & C. Co., 113 Mo. App. 330; Herbert v. Boot & Shoe Co., 90 Mo. App. 305; Nugent v. Milling Co., 131 Mo. 241; Glover v. Bolt & Nut Co., 153 Mo. 327; Coyne v. Railroad, 133 U. S. 372; Richardson v. Mesker, 171 Mo. 666; Pohlmann v. American Car & F. Co., 100 S. W. 544. (2) The court erred in permitting the plaintiff's counsel in the examination of the jurors upon their voir dire to ask the juror Samuel Polk and the juror Thomas W. Messick as to whether they knew anybody connected with the Travelers Insurance Company, and whether they did business with the Travelers Insurance Company. The Travelers Insurance Company was not a party to the suit, and the effect of asking this question was to suggest to the jurors that the Travelers Insurance Company might be interested in the case, and thereby work upon the prejudice of the jurors against insurance companies. Hoyt v. Davis Mfg. Co., 98 N. Y. Supp. 1031; Marrigold v. Traction Co., 80 N. Y. Supp, 861; Lipschitz v. Ross, 84 N. Y. Supp. 632; Sawyer v. Shoe Co., 90 Maine 369; Lassig v. Barsky, 87 N. Y. Supp. 425; Wildrick v. Moore, 66 Hun 630; Berning v. Medart, 56 Mo. App. 449; Labatt on Master and Servant, Sec. 826, and cases cited. (3) The court erred in refusing to permit the defendant to show by the witness Leonard that the machine upon which plaintiff was put to work was the safest machine of its kind known or used on the market and that such machines were in common use by boys of plaintiff's age, size and capacity. Mason v. Mining Co., 82 Mo. App. 367; Kane v. Falk Co., 93 Mo. App. 209; Minnier v. Railroad, 167 Mo. 99.

*J. F. & R. H. Merryman* for respondent.

(1) It is a breach of duty on the part of masters to expose an individual of the age, experience and capacity of plaintiff to such dangers without instructions and cautions which will enable him to comprehend them. Vanseler v. Box Co., 108 Mo. App. 629; Dowling v. Allen, 74 Mo. 1; Rolling Mill Co. v. Corrigon, 46 Ohio 283; Coal Co. v. Gaffney, 119 Ind. 455; Wharton, Negligence, 216; Sullivan v. Mfg. Co., 113 Mass. 396; Hickey v. Taafe, 105 N. Y. 26. If defendant was negligent in failing to instruct and warn plaintiff as to dangers connected with the operation of said machine, no assumption of risk could arise until after the master had performed his whole duty. Obermeyer v. Chair Mfg. Co., 120 Mo. App. 70; Blundell v. Mfg. Co., 189 Mo. 552. (2) The question of contributory negligence, where a young and inexperienced party is plaintiff, is almost always a question for the jury. Anderson v. Union Terminal Co., 161 Mo. 425. (3) It is not prejudicial error to have asked the jurors the two questions referred to. It is clearly proper for plaintiff's counsel to ascertain fully the situation of the juror as to parties interested in the suit to enable him to exercise his statutory right of peremptory challenge, as well as to lay ground for challenge for cause. Meyer v. Mfg. Co., 56 Mo. App. 391. (4) The grounds for challenge for cause to a juror must be particularly set forth. State v. Reed, 137 Mo. 132. In the aforesaid case the court cited with approval many civil cases, which shows that the rule is the same in both civil and criminal cases and it would seem to follow that objection to questions asked jurors should likewise be specific. "A liberal latitude should be allowed in the examination of the panel of jurors on their *voir dire.*" State v. King, 174 Mo. 658; State v. Mann, 83 Mo. 599.

Saller v. Shoe Co.

STATEMENT.—On January 13, 1905, plaintiff, a youth fifteen years and ten months old, was in the employ of defendant, and by defendant's direction was operating a sole molding machine, in defendant's shoe factory in the city of St. Louis. The machine had two sole molders, one to the right and one to the left of the operator. Each molder consisted of two pieces, or halves, made of iron and in shape of a shoe sole. The upper half was stationary; the lower one, when the machine was in operation, would descend from the upper one and then move out clear of the upper piece toward and near the operator; at this point of the operation, the operator's duty was to remove the sole which had been molded on the lower piece and put another one on it to be molded, the lower half would then draw back under the upper half and then move upward, pressing forcibly against the upper half. As the lower half of the right molder ascended, the lower half of the left molder descended and the same operation was gone through with again and again. On the day named, and while operating the machine the index and middle fingers of plaintiff's right hand were caught in the right-hand molder and so badly crushed they had to be amputated. The action is to recover for these injuries.

It is alleged in the petition, substantially, that plaintiff was without experience in operating the machine and that the machine was dangerous to operate, especially so for one of plaintiff's age and inexperience, and that defendant's foreman, with knowledge of plaintiff's inexperience and youth, negligently placed plaintiff to work on the machine but failed to instruct him how to operate it, and failed to warn him in regard to the dangers connected with its operation, and commanded plaintiff to operate it in a rapid and dangerous manner; that on account of plaintiff's youth and inexperience the danger of operating the machine was unknown to him and not appreciated. No com-

plaint is made in the petition, nor is there any proof that the machine was defective or out of repair.

The answer was a general denial and a plea of assumption of risk, and also of contributory negligence. The machine was driven by steam power and was set up in the sole leather department of defendant's factory. E. M. Leonard was foreman of this department and employed plaintiff about eight days before the accident, setting him to work on the machine where he was injured. Robert Marohn was operating the machine at the time, and Leonard directed plaintiff to Marohn, who told plaintiff to put his foot on the treadle of the machine, then put in one sole and then take it off and when he lifted his foot the sole would come out and the machine stop, and the same thing was to be done. over and over again. He operated the machine for a few minutes to demonstrate how it was operated. Plaintiff says this was all the instruction given him; that nothing whatever was said about any danger connected with its operation. The machine was put in motion by placing the foot on the treadle. It would stop in about two seconds if the foot was removed from the treadle. Plaintiff operated the machine six or seven days before he was injured. He testified that during that time he did not discover the machine was dangerous to operate and at no time apprehended any danger from its operation; that he operated it as he had seen Marohn operate it, by putting his foot on the treadle, placing a sole in the molder and taking his foot off again, so as to remove the sole from the molder and place another in it while the machine was at rest. Plaintiff testified that about twenty minutes before he was hurt, Leonard, the foreman, came around, saw a lot of work on the table and told plaintiff to "get a move on" himself and "hurry up the work," and if he could not he would get some one in his place to do the work; that from what Leonard said and from his manner he was afraid he would be discharged,

was scared and excited and worked in a hurry by putting his foot on the treadle of the machine and keeping it going continuously for twenty or twenty-five minutes and until he got hurt; that at the time he was hurt the machine was running fast, and to feed it, that is, to take out and put in soles in each molder he had to use both hands as fast as he could, and while doing so his fingers got caught, but he did not know how they were caught, in the molder. Defendant's evidence tends to show the machine was not dangerous; that it is in universal use in large shoe factories throughout the country; and that plaintiff was fully instructed by Marohn about how to operate the machine. Leonard denied that he told plaintiff to "get a move on" himself, or indicated that he would discharge him if he did not get the work out faster.

The verdict was in plaintiff's favor for $3,000. Defendant appealed.

BLAND, P. J. (after stating the facts.)—In the examination of jurors on their *voir dire* when counsel for plaintiff asked the following questions of Samuel Polk, one of the panel of jurors, the following occurred:

"By Mr. Merryman:

"Q. What business are you engaged in? A. Insurance agent.

"Q. What kind of business? A. Life and accident.

"Q. Do you insure against these accidents in factories? A. Yes.

"Q. Are you engaged in that kind of business? A. No, sir.

"Q. Do you do business with the Travelers Insurance Company?

"Counsel for defendant objected to that question as incompetent and immaterial.

"Q. The Court: I think it is material. I do not know who may be interested in this case. I do not see it will do any harm.

"Mr. Gentry: There is certainly no evidence that anybody is interested in this case except Mr. Saller and the Friedman Brothers Shoe Company from the records.

"Objection overruled. To which ruling of the court counsel for defendant then and there duly excepted at the time.

"A. I do business with them.

"Q. You do business with them, do you? A. Yes.

"Juror Thomas W. Messick was asked by counsel for plaintiff on his *voir dire.*

"Q. Your name is Thomas W. Messick? A. Yes.

"Q. You are a married man? A. No, I was.

"Q. You are a single man? A. Yes.

"Q. In what business are you engaged? A. I am in the auditor's office United Railways.

"Q. Did you ever hear of this case? A. No.

"Q. Is there any reason to prevent you giving the parties a fair and impartial trial? A. No.

"Q. Do you know anybody connected with the Travelers' Insurance Company?

"Counsel for defendant interposes the same objection. Objection overruled. To which ruling of the court counsel for defendant then and there duly excepted at the time.

"A. No."

The insurance company was not a party to the suit, and defendant's contention is that the effect of asking the question was to suggest to the jurors that the Travelers' Insurance Company might be interested in the case and thereby work upon the prejudice of the jurors against the insurance company. Of course such method of examination on the trial of the issues would not only be objectionable but extremely reprehensible. The course of the examination suggests the idea that plain-

tiff's counsel knew, or suspected, the Travelers' Insurance Company might be liable to defendant for any judgment plaintiff might recover in the action, and his object in making the examination was not to challenge the jury for cause (for this was not done) but to gain information to guide him in making his peremptory challenge; if such was his object, the examination was permissible, for counsel have the right to probe a proposed juror to the bottom, for the purpose of ascertaining whether or not his social or business relations, etc., are such as would probably prejudice him against a recovery in the character of case to be tried. The method of examination of jurors on their *voir dire* pursued by plaintiff's counsel was approved in the following cases: Faber v. Reiss Coal Co., 102 N. W. 1049; Chybowski v. Bucyrus Co., 106 N. W. 833; Foley v. Cudahy Packing Co., 119 Iowa 246; Iroquois Furnace Co. v. McCrea, 191 Ill. 340; O'Hare v. Railroad Company, 139 Ill. 151.

2. At the close of plaintiff's case, defendant offered a demurrer to the evidence. The refusal of the court to grant this request is assigned as error. Defendant's counsel contends the request should have been granted for the following reasons:

(a) Because no negligence was shown on the part of defendant.

(b) Because plaintiff's own evidence shows that he assumed the risk, if any, connected with the operation of the machine.

(c) Because plaintiff's evidence shows he was guilty of contributory negligence.

The evidence shows the machine could be stopped in two seconds, by the operator removing his foot from the treadle. If this should be done when the lower half of the molder descends and is pushed out clear of the upper half, and the molded sole is then removed and another sole put in its place to be molded, and the machine then started, the operation, it seems to us, would be very

simple and would be void of any danger to the operator. On the other hand, if the machine should be kept going rapidly and the operator should undertake, while the machine is in motion, to remove and replace soles in the under half of the molders, it seems to us he would be more than likely to get the fingers of one or both hands caught and crushed between the upper and lower halves of the molders. Plaintiff's evidence shows that when the foreman ordered him to "hurry up," he kept the machine going rapidly all the time to expedite the work, and that Leonard stood near him for a moment and saw his operating the machine in this manner but said nothing; that he (plaintiff) was scared and operated the machine rapidly to avoid being discharged, which he anticipated would be done if he did not succeed in turning off the work more rapidly than he had been doing; that he did not think of being hurt and no one had pointed out, or suggested, to him that it would be dangerous for him to operate the machine in the manner he was operating it at the time. We think this evidence tended to prove Leonard, the foreman, was guilty of negligence in not only permitting plaintiff to operate the machine in a dangerous manner, but also in exciting him to run it faster than could be done in safety. The contentions, that plaintiff assumed the risk and was guilty of contributory negligence may be discussed together: Plaintiff's proof is to the effect that he was not instructed how to operate the machine further than seeing Marohn operate it for a few minutes, and who told him to start the machine by putting his foot on the treadle and to stop it by removing his foot from the treadle; that he had never operated a machine of any kind before. Generally, an employee assumes such risks as are open and obvious, or which he would have observed had he used ordinary caution; but children are not expected to observe closely the construction of machines at which they

are put to work or to appreciate the ordinary risks incident to their operation, and for this reason are not held to assume the ordinary risks of their operation, or such risks as they do not perceive and apprehend, and of which they are not informed and warned against. Vanesler v. Box Co., 108 Mo. App. l. c. 628-9, 84 S. W. 201, and cases cited. As a youth grows in years and experience, he becomes more and more amenable to the rules of law in respect to the assumption of risk and contributory negligence applicable to adults, but there is no period of minority at which a court can say, as a matter of law, he, in this respect, stands on the same plane as an adult. His capacity, not his age is the criterion by which his responsibility and conduct should be measured; and whether or not a youth assumes the ordinary risks incident to his employment, or was guilty of negligence which contributed to his injury, where no instructions are given or the dangers of his employment pointed out to him by his employer, is almost always a question for the jury, and is always so where different inferences are fairly deducible from the evidence. [Anderson v. Railroad, 161 Mo. 411, 61 S. W. 874; Heinzle v. Railway, 182 Mo. 528, 81 S. W. 848; Anderson v. Railroad, 81 Mo. App. 116; Fry v. Transit Co., 111 Mo. App. l. c. 333, 85 S. W. 960; Edwards v. Railroad, 112 Mo. App. l. c. 659, 87 S. W. 587; Butler v. Railway, 117 Mo. App. 360, 93 S. W. 877.] On plaintiff's evidence we do not think it can be said, as a matter of law, that he comprehended the danger in operating the machine in the manner he was operating it at the time he was injured, and in view of his evidence, that he had been excited by the language of the foreman to run the machine fast and continuously, we think the questions as to whether or no he assumed the risk, and whether or no he was guilty of contributory negligence, were questions for the jury, and therefore that the demurrer to the evidence was properly overruled.

3. One of the allegations of the petition is, that the machine was dangerous, and especially dangerous to be operated by one of plaintiff's age and inexperience. After Leonard, the foreman (introduced by defendant as a witness) had testified that he was familiar with the machine and had worked in shoe factories for sixteen years, the following occurred:

"Q. I will ask you if that machine is a modern, well equipped, safe machine.

"Counsel for plaintiff objects to the question.

"Mr. Gentry: I propose to show by this witness that this machine is the safest machine of this kind that is known or used in the market.

"The Court: I do not think that is relevant in this case.

"Objection sustained.

"To which ruling of the court counsel for defendant then and there duly excepted at the time.

"Witness says machines of this make and type are in common use in shoe factories and in the trade in general.

"Q. And I will ask you whether or not they are commonly used by boys of plaintiff's age, size and capacity.

"Counsel for plaintiff objects to the question.

"Mr. Gentry: We offer to show they are.

"Objection sustained.

"To which ruling of the court counsel for defendant then and there duly excepted at the time."

In Bohn v. Railway, 106 Mo. at pages 433-4, 17 S. W. 580, BLACK, J., said:

"It is not the duty of the master to furnish any particular kind of tools, implements or appliances. His duty in this respect is to use ordinary care and diligence in selecting and furnishing safe and suitable tools and implements. No inference of negligence can arise from evidence which shows that the implement was such as is

ordinarily used for like purposes by persons engaged in the same kind of business." Quoted and approved in Minnier v. Railway, 167 Mo. 1. c. 113, 66 S. W. 1072. See also Mason v. Mining Co., 82 Mo. App. 1. c. 370, and cases cited; and Kane v. The Falk Co., 93 Mo. App. 1. c. 209.

The evidence that the machine was in common use was admissible for the purpose of rebutting any inference the jury might draw, that defendant was negligent in placing plaintiff to work on a dangerous machine without instructions, or warning of its dangers. It seems from the abstracts, that defendant succeeded in getting this evidence before the jury; its offer was to go yet further and show that boys of plaintiff's size, age and capacity commonly operated such machines. To admit this character of evidence and apply to boys the presumption arising from common use of a machine would, in effect, put boys in a class with the machines upon which they are commonly put to work by their employers and to measure a particular boy's capacity by a custom adopted by employers of boys generally. The law has not set up any such standard by which a court or jury may measure the capacity of a boy to appreciate and avoid the danger of a machine upon which he has been put to work by his employer.

4. Error is assigned in the giving of the following instruction for plaintiff:

"1. If the jury find and believe from the evidence that the defendant owned and operated the factory referred to in the evidence; and if the jury further find and believe from the evidence that in said factory was a machine known as a sole molder; and if the jury further find and believe from the evidence that on or about June 13, 1905, the plaintiff was in the employ of the defendant as an operator of said sole molder; and if the jury further find and believe from the evidence that on or about said date the defendant by its agent and servant

acting within the scope of his employment negligently commanded the plaintiff to 'hurry up and get a move on himself,' and that the plaintiff in obedience to said command, and in the presence of said agent thereupon started to operate said machine in a rapid manner, and that it was dangerous to plaintiff for him to operate said machine in such manner, and that the defendant by said agent, or any other agent, negligently failed to instruct and caution said plaintiff, so that plaintiff would comprehend the danger connected with the operation of said machine, and that directly on account of the aforesaid command and directly on account of the aforesaid failure to instruct and caution plaintiff as to the dangers aforesaid, plaintiff's right hand was caught in said sole molder and two fingers so crushed that it was necessary to amputate them and plaintiff thereby sustained the injuries mentioned in the evidence; and if the jury further find and believe from the evidence that the plaintiff at the time of said injuries was a minor fifteen years and ten months old, and that he was inexperienced in the operation of said machine, and that plaintiff did not know of and comprehend the dangers connected with the operation of said machine at the time of his injuries; and that said dangers were not apparent to a person of the age, experience and capacity of plaintiff, and that the defendant knew of plaintiff's inexperience, youth and capacity, and knew that plaintiff did not know and comprehend the dangers connected with the operation of said machine, or by the exercise of ordinary care might have had such knowledge, and thereafter might have instructed and cautioned plaintiff regarding same and failed to do so, then you should find for the plaintiff, unless you further find that plaintiff, at the time of his injury, failed to use such care and prudence as a boy of his age, experience and capacity should have ordinarily used under similar conditions and circumstances to have avoided injury."

It is argued that the instruction is erroneous, first, in that it permitted the jury to find defendant guilty of negligence in commanding plaintiff to "hurry up and get a move" on himself; second, that it allowed plaintiff to recover if defendant, by its agent, Leonard, or any other agent anywhere in its factory, negligently failed to instruct or caution plaintiff, so he would comprehend the danger connected with the operation of the machine; third, that it was error to permit the jury to find from the evidence, that plaintiff, by reason of his inexperience did not know and comprehend the danger of operating the machine at the time of his injury.

In Coyne v. Railway, 133 U. S. 370, plaintiff was a laborer or construction hand, under a construction boss or foreman of the defendant. He was injured by the fall of a steel rail, which he and other laborers were trying to load from the ground upon a flat car, and which struck the side of the car and fell back. The negligence alleged was, that the foreman moved out the construction train to which the flat car belonged, in the face of an approaching regular freight train,—to avoid which the laborers were hurrying to load the rails; and that he failed to give the customary word of command to lift the rail in concert, but, with the approaching freight train in sight, and with oaths and imprecations, ordered the men to get the rail on in any way they could, and they lifted it without concert. "Held, that whatever negligence there was, was that of either the plaintiff himself or of his fellow servants who with him had hold of the rail." Coyne, the plaintiff, was not a minor, nor was there allegation or proof that he was so excited or frightened by the language of the foreman as to throw him off his mental balance; for these reasons the case is not authority for holding, that a command given to a youth in such a way as to frighten him and cause him to use undue haste in the performance of his work is not negligence.

The second objection to the instruction is not well taken, for the reason it would class plaintiff, a youth, with an adult, and hold him to the exercise of the same degree of prudence and caution. In support of the second objection, it is argued that the jury might find that if anybody in the whole factory, who was the agent of defendant for any purpose, failed to instruct or warn plaintiff, he might recover. The instruction as it reads is open to this criticism. But in the light of the testimony of plaintiff, of Leonard, the foreman, and of Marohn, that Leonard directed plaintiff to Marohn, who was operating the machine at the time, for instructions, and that Marohn run the machine a few minutes to show plaintiff how it was operated, it is not at all probable, and hardly possible, that the jury construed the instruction as defendant contends they might have done. As reasonable men (and the jurymen are presumed to be such) they would construe the instruction to mean that negligence might be predicated on the failure of Leonard or Marohn, or both, to instruct plaintiff how to operate the machine with safety, not on the non-action of some other agent of defendant with whom plaintiff had no communication whatever. In support of the third objection to the instruction, defendant insists that plaintiff's own evidence shows he comprehended and appreciated the very action of the machine which caused his injury. Plaintiff, on cross-examination, testified he knew if his fingers were caught between the upper and lower halves of the molder when they came together, they would be crushed. Of course he knew this; the simplest child would know as much if it observed the operation of the machine, but it might not, and probably would not make the observation. Plaintiff's evidence tends to prove that though he knew his fingers would be mashed if caught between the two halves of the molder when they came together, yet he swore he never thought of getting hurt. His evidence

shows that the idea that he might be hurt never entered
his mind until he was hurt; while his evidence shows
he knew he might be hurt in the manner he was hurt, yet
he never thought of or appreciated the danger of getting
hurt in that manner.    It is because of this very thought-
lessness and on account of the inexperience of minors
that the law does not hold them to the exercise of the
same degree of care as it requires of adults.

5.   The court refused the following instructions
asked by defendant:

"a.   The court instructs the jury that if you believe
and find from the evidence in this case that the machine
by which the plaintiff was injured, while in the employ
of the defendant, was in perfect working order at the
time of plaintiff's injury, and was such a machine as was
customarily used by reasonably prudent persons in the
business in which defendant was engaged, for the work
which said machine was required to do; and if the jury
further find from the evidence that the plaintiff was a
boy fifteen years of age, of average intelligence, and hav-
ing sufficient capacity to understand the danger of hav-
ing his fingers or hand injured if the same were permit-
ted to be caught between the upper and lower portions of
the machine used to mold soles; and if the jury further
find from the evidence that the plaintiff voluntarily be-
gan to work at said machine and continued to work there
with a full knowledge and understanding of whatever
danger there was connected with the operation of said
machine, then the plaintiff assumed the risk of injury
which might result to him from the operation of said
machine and is not entitled to recover in this case and
your verdict must be for the defendant.

"b.   The court instructs the jury that the plaintiff
charges in his third amended petition in this case that
the defendant negligently exposed him to the dangers
connected with the operation of the machine in question
without instructions or caution which would enable him

to comprehend and appreciate said dangers. You are therefore instructed that if you believe and find from the evidence in this case that at the time of and prior to plaintiff's injury he knew that if his hand was caught between the upper and lower soles of said machine it would be injured, then the defendant is not liable to him in damages for failure to instruct or caution him concerning the danger of injury."

If plaintiff had been an adult, and the danger to which he was exposed in the operation of the machine had been obvious, defendant's failure to call his attention to such danger, or to instruct him, would not constitute negligence, for the reason the law presumes he saw and appreciated the danger to which he was exposed. [Nugent v. Milling Co., 131 Mo. 241, 33 S. W. 428; Herbert v. Mound City Boot & Shoe Co., 90 Mo. App. 305.] But as we have seen, the law is different where the plaintiff is a minor. The mere fact that the danger to which he is exposed is open and obvious to a man of ordinary prudence, does not relieve the employer from the duty of instructing a minor in respect to such obvious danger; nor did the fact that plaintiff knew his fingers would be crushed if caught between the upper and lower molders of the machine while they were being pressed together, relieve defendant from instructing plaintiff how to avoid this danger, nor of the duty to warn him against it. The instruction is also faulty in that it ignores altogether the allegations and proof that the injury was caused by the negligence of defendant's foreman in exciting and stimulating plaintiff to run the machine at a rapid and dangerous speed.

7. The foregoing discussion applies to refused instruction B. This instruction ignores the minority of plaintiff, and would require of him the exercise of the same degree of caution as the law exacts of an adult.

8. It is finally contended that the verdict is excessive. Plaintiff lost the index and middle fingers of

his right hand. Not only is the hand maimed and deformed and its beneficial use depreciated for life at least half, but the stumps of the amputated fingers are shown by the evidence to be tender and painful at times. Plaintiff suffered great pain and mental anguish. He lost considerable time. He is entitled to compensation for his loss, present and future, and for bodily pain and mental anguish caused by the injury. Such a loss is not susceptible of mathematical calculation. It can only be estimated on proof of the nature, extent and permanency of the injury, based on plaintiff's expectancy of life. Its estimation was therefore within the peculiar province of the jury, and their verdict should not be interfered with unless the damages are so manifestly excessive as to show they were influenced by passion or prejudice. No such showing is made by any evidence in the case, nor do we think it is indicated by the amount of the verdict.

No reversible error appearing the judgment is affirmed. All concur.