## BOSTON & M. R. R. v. BAXTER.

### (Circuit Court of Appeals, First Circuit. December 10, 1915.)

### No. 1138.

1. MASTER AND SERVANT ☞278—ACTIONS FOR DEATH—SUFFICIENCY OF EVIDENCE.

Where, in an action for the death of a railroad fireman, there was evidence to show that he was killed by coming in contact with a bridge only 15½ feet above the track, that the top of the tender was 11½ feet above the track, and the coal therein was piled somewhat higher, and it was not contended that he would have been outside the line of his duties, had he gone upon the coal in the tender, the jury might have found the railroad company negligent in permitting the tender so loaded to be run beneath so low a bridge.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 951, 956–958, 960–969, 971, 972, 977; Dec. Dig. ☞278.]

2. MASTER AND SERVANT ☞270—RAILROAD TRACKS—BRIDGES—STATUTORY PROVISIONS.

In an action for the death of a railroad fireman, caused by contact with a low bridge over the railroad track, St. Mass. 1874, c. 372, § 87, providing that no bridge should thereafter be constructed over any railroad at a height less than 18 feet above the track, except by the consent in writing of the Board of Railroad Commissioners, was offered in evidence, and it was shown that the board had taken no action regarding the bridge. The evidence showed that the bridge was in existence in 1850, and the only evidence tending to show a subsequent rebuilding or reconstruction was the testimony of a civil engineer that the planking of such a bridge had to be renewed every 10 or 12 years, that the stringers would wear two or three times as long, and that in most cases the superstructure would have to be renewed in a period of 40 years. *Held*, that the mere renewal of the planking, the stringers, or the superstructure was not such a reconstruction of the bridge as would violate the statute, and, conceding that the evidence would have been admissible in connection with further evidence tending to show reconstruction, the evidence should have been stricken out, or the jury told to disregard it.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 913–927, 932; Dec. Dig. ☞270.]

3. MASTER AND SERVANT ☞278, 293—ACTIONS FOR DEATH—QUESTIONS FOR JURY—NEGLIGENCE OF DEFENDANT.

In an action for the death of a railway fireman, caused by coming in contact with a low bridge, it appeared that no one saw him after leaving the cab of the locomotive, and it was contended that he went upon the coal in the tender and was struck by the bridge. There was evidence that a fire hook was found in the coal pile, that the person coaling the engine usually placed this in some out of the way place, and it was plaintiff's theory that deceased went on the coal for the purpose of getting this hook, and that if he had been given sufficient time to prepare the engine before leaving the terminal this would not have been necessary. There was evidence that one hour had been agreed upon between defendant and its employés as the time for getting an engine from the roundhouse to its connection with its train, that the engine originally assigned to take out the train in question could not be made ready in time, because a pipe sent out to be brazed did not arrive as expected, and another engine was substituted, so that only 20 minutes was available to make it ready. The engineer testified that he thought the fire would have to be refreshed "most any place along there," referring to the time the fireman left the cab. *Held* that, if this evidence was admissible

to show what deceased probably did after he left the cab and how the injury was sustained, it was not in itself evidence of negligence which could be regarded as the sole or a contributing cause of the injury, and the court erred in charging that if deceased was not given time to prepare his engine, and was obliged to go on the tender after the train started, the jury might find the want of sufficient time to prepare the engine evidence of negligence on defendant's part, since the nonarrival of the pipe and the consequent impossibility of using the originally assigned engine did not of themselves warrant a conclusion of negligence, and, even if they did, it was not a natural and probable consequence of such negligence reasonably to be anticipated that the hook would be misplaced, and be wanted, and found missing just before reaching the bridge, and that this would lead the fireman to go upon the coal at a time when he would incur the danger of being struck by the bridge.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954, 956–958, 960–969, 971, 972, 977, 1148–1156, 1158–1160; Dec. Dig. ⊛278, 293.]

In Error to the District Court of the United States for the District of Massachusetts; Clarence Hale, Judge.

Action by Mary M. Baxter, administratrix, against the Boston & Maine Railroad. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

Archibald R. Tisdale, of Boston, Mass., for plaintiff in error.

Charles C. Barton, Jr., of Boston, Mass. (Barton & Harding, of Boston, Mass., on brief), for defendant in error.

Before PUTNAM, DODGE, and BINGHAM, Circuit Judges.

DODGE, Circuit Judge. The defendant in error (hereinafter called plaintiff) has recovered judgment in the Massachusetts District Court against the plaintiff in error (hereinafter called defendant) for the death of her intestate, Leslie M. Baxter, instantly killed on August 15, 1913, soon after 4 p. m., while in the defendant's employ as fireman on one of its engines, then hauling an express passenger train bound west from Boston, in interstate commerce. Her suit was brought under the federal Employers' Liability Act. Act April 22, 1908, c. 149, 35 Stat. 65 (Comp. St. 1913, §§ 8657–8665). The plaintiff's right to maintain the suit under that act, if the defendant's negligence caused Baxter's death, was not questioned.

The declaration, in two counts, alleged, in substance: (1) That Baxter was killed by striking the defendant's bridge at Prospect street, Somerville, owing to negligence on its part in its engines, appliances, roadbed, works, and other equipment; (2) that his death was due to negligence on the defendant's part in erecting, constructing, and maintaining said bridge at an insufficient height above the track, and also in other respects further referred to below.

[1] No witness on either side saw the accident happen. Baxter was in the cab of the locomotive with the engineer when the train left Boston at 4:01 p. m. The engineer, who had seen him get down from his seat in the cab before the train had reached the Prospect Street bridge, missed him soon after passing it and stopped the train at Cambridge, a short distance further west. Baxter was then found dead in the back compartment of the tender, behind the pile of coal carried

in its forward compartment. The exceptions state that "a subsequent examination revealed signs establishing the fact that his head had come in contact with the bridge." His cap was later found 25 to 30 feet west of the bridge, in the ditch north of the track. There was no witness who saw him alive after he left his seat as above.

The bridge, at its lowest point, was 15½ feet above the track whereon the train was moving; the top of the tender 11½ feet above the track; and the coal carried therein was piled higher than the top of the tender. So much was undisputed. There were differing estimates as to how far above the top of the tender the coal was piled. The ordinary height at the center was testified to be 13 feet above the track— i. e., 18 inches above the top of the tender—though there was evidence from which the height might have been found to have been 3 feet above the top of the tender, but in no event higher than the top of the cab on the engine, which was 15 feet above the track. No other way appearing in which Baxter could have brought his head where it would strike the bridge after he left the cab and before he was found dead on the tender, the jury might have found that he went from the cab upon the coal in the tender and was somewhere on the coal when struck by the bridge. It was not contended that he would have been outside the line of his duties, had he thus gone from the cab upon the coal.

Since it thus appeared that, without regard to any coal above it, the top of the tender could have passed only 4 feet below the bridge, and that the actual clearance available for a man on the coal was necessarily as much less than 4 feet as the coal may have brought him above the top of the tender, the jury might, on the evidence, have found this clearance too small to afford a margin of safety reasonably sufficient under all the circumstances, and might, therefore, have found the defendant negligent, as regarded the safety of an employé whose duties might bring him on the coal, in permitting the tender, so loaded, to be run beneath so low a bridge. There was evidence that, since the bridge was built, the size of engines in use had materially increased, and that this engine and tender were of the largest type then in use in passenger service on that division of the defendant's road.

The accident happened in broad daylight, on a clear day. There were the usual telltales on both sides of the bridge. No question was raised as to their sufficiency. The answer alleged negligence on Baxter's part contributing to his injury and death; but such negligence, under the act, would have been at most matter for the jury to consider in assessing damages, and none of the assignments of error raise any question relating to this defense. The evidence before them would have permitted them to find that he reached a position on the coal which brought his head where it would strike the bridge, after the telltale intended to give warning that the bridge was near had been passed, but before the bridge itself was reached.

[2] Assignments of error 1–4, inclusive, complain of the admission of certain evidence introduced by the plaintiff against the defendant's objection.

(1) A Massachusetts statute (chapter 372, § 87, of the Acts of 1874), offered "as a matter. of evidence that that statute had not been complied with," was thus admitted. It provides:

"That no bridge for any purpose shall hereafter be constructed over any railroad at a height less than eighteen feet above the track  *  *  *  except by the consent in writing of the Board of Railroad Commissioners."

· It was further shown that the board referred to had "taken no action on the bridge." There is no contention that the class of persons in whose favor this statute imposes a duty is a limited class, not including the person for whose injuries recovery is sought, as in N. Y. Central, etc., Co. v. Price, 159 Fed. 339, 86 C. C. A. 502, 16 L. R. A. (N. S.) 1103. Had the plaintiff also shown that the defendant constructed this bridge after the statute took effect, a breach of statutory duty on its part would have been shown which might have been evidence of its negligence toward Baxter. Union Pacific, etc., Co. v. McDonald, 152 U. S. 262, 283, 14 Sup. Ct. 619, 38 L. Ed. 434.. But the plaintiff's evidence did not go so far. It showed that the bridge was in existence in 1850; and the only evidence having any tendency to show subsequent rebuilding or reconstruction was that of a civil engineer in the defendant's employ, who testified that the planking of such a bridge has to be renewed as often as every 10 or 12 years, that the stringers wear two or three times as long, and that in most cases the superstructure would have to be renewed in a period of 40 years. This evidence also was admitted against objection. Conceding that it might have been admissible in connection with further evidence tending to show reconstruction, ·as the case went to the jury, we do not think that any finding that the defendant had in fact reconstructed the bridge since 1874, and had thus violated the statute, would have been justified by the evidence before them. Mere renewal of the planking,· or of the stringers, or of the superstructure, would not have been such reconstruction. All the above evidence should have been stricken out, or the jury told to disregard it. · The court instructed them, at the defendant's request, that:'

"There is no evidence of the violation by the defendant of any statute, the violation of which precludes the defendant from the right to have the jury consider the question whether or not the plaintiff's intestate was guilty of contributory negligence."

But it left them to consider both the above statute and the above evidence as to the usual duration of superstructures in such bridges, upon the general question of the defendant's negligence as regarded Baxter; and this notwithstanding that both had gone in subject to objection. We cannot say that the defendant was not thereby prejudiced, and must therefore sustain the first two assignments of error. .

[3] (2) Among the respects wherein the second count alleged the defendant to have been negligent were an alleged failure to allow Baxter time enough to prepare the engine before the train left Boston, and alleged improper coaling of the tender. Because of these alleged failures to use due care, Baxter, according to the second count, was prevented from getting the engine, tender and equipment ready before the train left, and, because he had been so prevented, found it necessary

to go upon the coal in the tender in order to get from there a fire hook which would have been put within reach from the cab before starting, had he been allowed time for preparation as above, thus exposing himself to the risk of being struck by the bridge.

It appeared without contradiction, from evidence objected to, but the admission whereof is not assigned as error, that the fire hook was found, after the accident, in the center of the coal pile on the tender. It was a two-pronged hook, about nine feet long, used for raking and leveling the fire, and there was evidence that in coaling the engine, if the hook was found "where the coal goes," it was usually placed by the man engaged in coaling "in some out of the way place."

Evidence was admitted against the defendant's objection tending to show that one hour had been agreed on, between the defendant and its employés, as the time for getting an engine from the Fitchburg roundhouse to its connection with its train in the North station, the engineers and firemen being required to register on duty one hour before their trains were due to leave; that the engine originally assigned to take out Baxter's train having been found incapable of being made ready in time within the hour and after being partly got ready, because one of its pipes which had been sent out to be brazed did not arrive as expected, another engine was then substituted, being the engine which did take the train out; that, instead of one hour, 20 minutes only was thus left available for doing everything necessary to make the substituted engine ready and bring it from the roundhouse to the train.

The engineer who ran this engine was allowed to testify, against the defendant's objection, that, from his experience as engineer and fireman, he though "the fire would have to be refreshed most any place along there," after the time occupied in running from the North station to the place at which Baxter left his seat in the cab.

The above evidence, admitted against objection, is that to which the third and fourth assignments of error refer. If it was admissible, in that it helped to show what Baxter probably did after he left the cab, where he probably was when the tender went under the bridge, and therefore how the injury which killed him was in fact sustained, it was not, in itself, evidence of such negligence on the defendant's part as could properly be regarded either as the sole or as a contributing cause of Baxter's injury. The nonarrival of the pipe expected, and the consequent impossibility of getting the originally assigned engine ready in time, did not, of themselves, warrant the conclusion that negligence on the defendant's part caused the substitution of a different engine and the resulting necessity for getting that engine ready in 20 minutes, and there was no other proof to that effect. And even if these results could properly have been found due to any negligence of the defendant, it could not be called a natural and probable consequence of such negligence, reasonably to be anticipated, that the hook would be misplaced, that it would be wanted just before reaching this bridge, that it would there be found missing, and that the want of it would lead Baxter to go upon the coal at a time when, by so doing, he would incur the danger of being struck by the bridge. The evidence

here in question does not appear to have been admitted for any limited purpose, but generally, and the only instruction given the jury regarding it—an instruction duly excepted to by the defendant—was, as set forth in the eleventh assignment of error, that:

"If [the jury] should find that the plaintiff's intestate was not given time by the defendant's agents to prepare his engine, and therefore was obliged to go on the tender after the train had started, then the jury may find the want of sufficient time to prepare his engine evidence of negligence on the part of the defendant."

The negligence here referred to could only have been negligence causing Baxter's death. We think the evidence referred to was wrongly admitted for the purpose stated in the instruction, and that the above instruction was, in itself, erroneous in that it permitted the jury to find as a cause of Baxter's death something which could in no proper sense be said to have caused it, viz., the allowance of 20 minutes only, instead of an hour, for getting everything ready before the engine and the tender left Boston, and also to find that there had been a negligent failure by the defendant to allow sufficient time, of which there was no proof.

The above conclusions are enough to prevent us from sustaining the judgment below, although we find nothing in the remaining assignments of error which can avail the defendant. No verdict, in our opinion, could properly have been directed in its favor, even if all the evidence wrongly submitted to the jury, as above, had been withheld from their consideration; nor would any ruling have been justified that, upon the evidence, Baxter had assumed the risk of the injury from which he died.

The judgment of the District Court is reversed, and the case remanded to that court for further proceedings not inconsistent with this opinion; and the plaintiff in error recovers its costs of appeal.

PUTNAM, Circuit Judge (concurring). Without coming to any particular conclusion with reference to the grounds taken by the opinion of the court in this case, I concur in the result reached by it that there ought to be a new trial.

It was settled, so far as we are concerned, in Central Vermont Railway Company v. Bethune, decided on September 23, 1913, and reported in 206 Fed. 868, 124 C. C. A. 528, that the Employers' Liability Statutes of the United States do not supersede the common-law doctrine of assumption of risk in cases where the common-law doctrine formerly applied, and no violation of any statute on the part of the defendant is proven. This proposition is in harmony with later decisions of the Supreme Court in various cases, the last of which is Seaboard Air Line Railway Company v. Horton, 233 U. S. 492, 34 Sup. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475.

The bridge with which the head of the intestate came in contact, causing his death, was not maintained in violation of any statute; but, if maintained through any fault of the Boston & Maine Railroad, it was through fault which was in violation only of the rules of the common law. Therefore, so far as I can perceive, the intestate might have

assumed the risk of the events which caused his death in accordance with all the rules of the common law.

One of the events in the line of circumstances which preceded his death was the confusion arising out of the unexpected replacing of the locomotive which was intended for the train on which the intestate was killed, by the locomotive which was in fact used thereon. This is now discussed as though it were a question simply of the direct materiality of those circumstances. I think that in that point of view the evidence in reference to the replacing of the locomotive may have been too remote, and should not have been admitted from that point; but it is very evident that that particular group of facts might have been looked at from another aspect—in substance, that, on account of the haste in replacing the locomotive, the locomotive in connection with which the intestate was killed left the station in some degree of confusion. This is quite apparent from the discussion of this line of events by the court in its charge to the jury. From that part of the charge it is quite apparent that the court might have considered, and probably did consider, that the jury might have found that the intestate justly became temporarily unconscious of the conditions with reference to the bridge, on account of his being suddenly called on to remedy the confusion to which I have referred, particularly in looking after the hook for raking the coal, which had been thrown out of its proper place in the confusion, and thus located on the top of the coal on the tender, when otherwise, and ordinarily, it might have remained easily accessible. The record does not make it clear whether or not the case was presented to the jury in this aspect, although it apparently should have been.

The plaintiff in error was entitled to have the case submitted clearly to the jury on the question as to the acceptance of risk, with whatever qualification properly grows out of these suggestions. Therefore I agree that there should be a new trial.