## COHEN v. SMITH, A MINOR.

*Error proceedings—Judgment not reversed upon weight of evidence where testimony merely conflicting—Judgment must shock senses and a grave error appear—Court of Appeals' judgment cannot affect judgment of court below, when—Negligence—Pedestrian struck by automobile—Voir dire examination of jurors—Inquiry whether jurors connected with casualty company not prejudicial, when—Failure to object or except until after jury sworn—Verdict of $5,000 for injuries to minor not excessive, when—Excerpts from charge to jury considered with remaining portions— Charge upon parties' duty to exercise ordinary care not error, when—Doctrine of last clear chance applies, when —Ordinary care to be exercised up until last moment— Requiring automobile driver to exercise care to observe pedestrian's danger not prejudicial—Charge that driver "should have observed" watchfulness not equivalent to nonobservance—Jury presumed capable of determining essential facts upon which instructions given.*

1. Mere conflict in testimony precludes reviewing court from reversing judgment.

2. To reverse judgment as against the evidence, it must shock the senses, and a grave error by court or jury must appear.

3. Court of Appeals' judgment cannot affect judgment of court or jury below, if verdict is supported by credible evidence.

4. In action for injuries to pedestrian struck by automobile, permitting plaintiff's counsel to ask jurors on their *voir dire* whether they were connected with casualty companies *held* not prejudicial error nor abuse of sound discretion.

5. Objection to *voir dire* examination of jurors by plaintiff's counsel as to whether they were connected with casualty companies *held* waived by failure to object or except until after jury was sworn.

6. Plaintiff, in action for injuries to pedestrian struck by automobile, had right to ask jurors on *voir dire* whether they

were connected with casualty companies, in absence of bad faith.

7. Verdict awarding $5,000 damages to minor for bruises and contusions, scalp wound greatly enlarging pupil of one eye, and fractured elbow, resulting in her confinement to hospital for nine days and to her home for three weeks thereafter, and causing dizzy spells, nervousness, and headaches, *held* not excessive by reason of passion and prejudice.

8. Excerpts from court's charge must be considered with remaining portions to determine whether they are prejudicial, as charge must be taken as a whole, not by sentence, paragraph, or excerpt.

9. In action for injuries to pedestrian by automobile, instruction that defendant's negligence was proximate cause of injury, if plaintiff's negligence merely put her in place of danger, of which defendant knew or would have known by exercising ordinary care, but that verdict should be for defendant, if plaintiff failed to observe ordinary care up to very moment of injury, and defendant did not know and could not have observed her danger by exercising ordinary care until he was so near as to be unable to avoid injury by exercising such care, *held* not error, in view of charge that both were bound to observe ordinary care to avoid accident.

10. The "doctrine of last clear chance" applies where both parties concur in negligence and one inflicting injury could have prevented it by exercising ordinary care under circumstances after other ceased to be negligent.

11. Exercise of ordinary care to avoid injury is required up until last moment, which involves doctrine of last chance; being unbroken continuity ending only with culmination of circumstances.

12. In action for injuries to pedestrian struck by automobile, charge that it was defendant's duty to observe ordinary care, "such as would have enabled him to observe the danger to the plaintiff," whether latter was prudent or careful or whether she was neglectful in observing defendant's car approaching, *held* not prejudicial error, in view of whole charge and record.

13. In action for injuries to pedestrian struck by automobile, charge that automobile driver "must observe" and defend-

ant "should have observed" such watchfulness as ordinary care demands for pedestrians *held* not prejudicial as equivalent to charge that defendant did not observe; import of language being that it was driver's duty to exercise ordinary care in his observance.

14. Jury is presumed to be capable of determining essential elements of facts on which court's instructions are given.

(Decided May 2, 1927.)

ERROR: Court of Appeals for Cuyahoga county.

*Mr. Paul Howland,* for plaintiff in error.
*Messrs. McMahon & Zimmerman,* for defendant in error.

SULLIVAN, P. J. This is a proceeding in error from the common pleas court, and Irene M. Smith, a minor, by John Smith, her next friend, was plaintiff below, and Harry Cohen was defendant below, and a judgment for $5,000 was recovered by plaintiff against defendant.

Three distinct grounds of error are charged:

First. An abuse of discretion on the part of the trial court.

Second. Passion and prejudice on the part of the jury.

Third. Error on the part of the court.

It appears from the record that the plaintiff, on May 24, 1923, about 10 o'clock at night, was severely injured while walking across East Ninety-Third street, directly in line with St. Catharine Avenue West, and therefore on the crosswalk. It further appears that she was with her escort, and their destination was along the route of which St. Catharine Avenue West was a part. While stand-

ing in the devil strip on East Ninety-Third street, waiting for some automobiles to pass south, they were struck by an automobile driven by defendant, from which resulted the injuries complained of.

There is some argument made orally as to the weight of the evidence, but it appears from the record that there is credible evidence to support the verdict, and upon this question we do not find that there is any error, because a mere conflict in the testimony precludes a reviewing court from reversing the judgment. Indeed, the later authorities have gone so far as to say that even some evidence is sufficient to sustain the verdict, if it applies to all the essential elements of the case. The judgment must shock the senses, and it must appear that a grave error was made by the court or jury below, and this error must be distinguished beyond the field of mere conflict. In other words, after reading the testimony, there must appear to project from the record, by way of a net balance, a situation which reveals the mistaken judgment of the court or jury. Our own judgment cannot affect the judgment of the court or jury below, providing there is credible evidence to support the verdict, and it is only as a matter of law, along the lines just noticed, that a reviewing court can reverse the verdict. This is established by the following authorities:

"A judgment will not be reversed because the verdict is contrary to the evidence, unless it is manifestly so, and the reviewing court will always hesitate to do so where the doubts of its propriety arise out of a conflict in oral testimony." *Breese* v. *State,* 12 Ohio St., 146, 80 Am. Dec., 340.

"The court should not set aside the verdict upon mere difference of opinion with the jury." *Remington* v. *Harrington,* 8 Ohio, 508.

"When the evidence is conflicting, a verdict will not be reversed, because the evidence against the verdict is strong." *Higgins* v. *Drucker,* 22 C. C., 112, 12 C. D., 220.

This question is not raised by the brief, but it was touched upon in oral argument, so for that reason we advert to it briefly.

The first assignment of error in the brief of plaintiff in error is abuse of discretion in the trial court in permitting counsel for plaintiff below to make inquiries of the jurors on their *voir dire* as to whether they were connected in any manner with casualty companies. It is admitted by counsel for plaintiff in error that he has no quarrel with the authority of *Lish* v. *Denny,* 23 O. L. R., 229, the syllabus of which is as follows:

"In an examination of jurors on their *voir dire,* it is not prejudicial error to permit counsel to ask whether there are in the panel any stockholders or persons otherwise interested in indemnity insurance companies, where the inquiry is made in good faith and the environment affords a reasonable belief in its propriety."

In the case of *Lish* v. *Denny, supra,* and which is admitted by counsel for plaintiff in error to be the law, the syllabus in the case of *New Ætna Portland Cement Co.* v. *Hatt* (C. C. A.), 231 F., 611, was quoted, as follows:

"In an action against a manufacturing corporation to recover for the death of an employe, it was not error for the court, in the exercise of its discretion, to permit plaintiff's counsel, in the ex-

amination of jurors on their *voir dire,* to ask each separately whether he had ever been in the insurance business, and whether he had ever been agent for a particular insurance company named."

Bearing upon this question, the Supreme Court of Ohio, on May 1, 1923, refused to grant a motion to certify a case from Stark county (No. 17899), entitled *Canton Art Metal Co.* v. *Harvey O. Wiley, Adm'r.,* and it is significant that the plaintiff in error in that case filed a brief to support its motion to certify, wherein were given the following facts, which are very important when it comes to the determination of this question as to abuse of discretion, raised in the instant case:

"After prospective jurors had been inquired of upon *voir dire,* the jury box being occupied with then accepted jurors, counsel for the plaintiff propounded a question, which is best understood by reference to the Record, p. 1, 'During the impaneling of the jury, counsel for the plaintiff inquired of the jury whether any of the members thereof had any interest or stock in the Great American Mutual Indemnity Company, whereupon counsel for the defendant objected, and following with the remark, "How is this competent?" to which counsel for the plaintiff answered, "We claim it is competent as bearing on what we understand, namely, that the defendant company carries some insurance with the Great American Mutual Indemnity Company," whereupon counsel for the defendant objected and asked that the same be withdrawn from the jury, which the court then refused, and, to the ruling of the court, counsel for defendant excepted.'

"The question presented, therefore, is: In the

impaneling of a jury in civil action and in the examination of talesmen upon *voir dire*, may they be interrogated as to their interest, if any, in an insurance or indemnity corporation or association, which insurance corporation or indemnifying company or association is not a party to the suit?''

In *Lish* v. *Denny, supra,* we find this question of the abuse of discretion, as bearing upon questions relating to insurance companies, and put to jurors on their *voir dire*, analyzed as follows:

"The main contention made by counsel for defendant in error is not that prejudicial error was committed because the subject-matter was placed before the jury, but largely because of the manner in which the subject of a liability company was introduced in the minds of the jury. The court below refused the motions above named and proper exceptions were taken by complaining counsel. It is the manner in which the interrogatory was made which is emphasized by counsel for plaintiff in error. He charges that the question was brusquely and bluntly put to the jurors, without any prelude or preliminaries. It is argued that, had plaintiff's counsel below inquired of the jury as to their occupations, and from that point elicited answers which might indicate their connection with the liability company, then and thereupon the question as to their being stockholders in a liability insurance company might be considered proper, in order to determine the qualification of the jurors.

"So that really the inquiry to be made from the argument of counsel is whether the question being asked directly, without any other preliminary questions, instead of in a circuitous manner, created prejudicial error.

"It is true that the Liability Insurance Company is not a party to the record, but it must not be forgotten, when it comes to the responsibility of counsel, that he must consider that the Liability Insurance Company may be, and probably is, an invisible party, and the invisibility of the party is one of the main reasons why there is an important duty incumbent on counsel to ascertain the qualification of jurors in that respect.

"It does not appear to the mind of this court that, if it is proper to secure the information by way of prelude or preliminaries, it would not be improper to ask the same question practically after certain preliminary questions were put, leading up to the ultimate subject. In fact it appears to us that the subject of liability insurance would make a deeper impression upon the minds of the jury and be more liable to lead the jury to indulge in speculations upon the subject by making the ultimate question a climax to the preliminaries, than if, without any prelude whatever to the main question, the interrogatory came before the jury without any embellishments.

"It is a well-known principle in the expression of language that coming to the main question by gradations is more apt to stamp its influence upon the minds of hearers, than in any other way. It must not be forgotten that counsel has the right, when acting in good faith, to ascertain before the oath is administered the qualification of jurors. It is a matter of common knowledge in the universal use of automobiles that of a necessity for self-protection the benefit of liability insurance companies must be sought. In determining the pro-

priety of the interrogatories in question, the fact cannot be ignored that jurors have at least the same knowledge as any other body of the laity that liability insurance companies, at the present day, are almost inevitable elements of the ownership of automobiles, and thus, in the reasonable exercise of common sense, it cannot be inferred that, without such interrogatories as the ones in question, the jury would not be cognizant of the connection between the ownership of automobiles and liability insurance companies. Such a situation could not escape the attention of an intelligent court sitting in the trial of a case to determine whether the interrogatories were asked in good faith and whether the defendant below was in any manner prejudiced by the putting of such questions, either circuitously or by a direct method.

"One of the ways to determine whether such a question is proper, is to consider a case where counsel goes to trial and rests content with a jury, without either directly or indirectly making the inquiry as to whether said jurors are stockholders or otherwise interested in liability insurance companies. Could it be said that with such an omission he was loyal to his client's interests? It would be possible to try the merits of the case before a jury where some of the members would be disqualified by reason of their being financially interested in liability insurance companies. In other words, the obvious negligence in such an omission emphasizes the duty of counsel in such cases as the one at bar in making proper inquiry in good faith as to the financial interest, or otherwise, of jurors in liability insurance companies. Litigants have a right to

know whether jurors by reason of their connections will naturally be biased or prejudiced in the determination of the issues of the case, and the time has come in the progress of locomotion by automobile that liability insurance companies and automobile ownership are so intimately related one to the other that the fact has become of common knowledge, and thus it is almost weird to presume that jurors are not possessed of this common knowledge and would not become aware of it excepting that the interrogatories, of the nature of the ones at bar, are put to them as prospective jurors in the trial of causes.

"In considering the propriety of these interrogatories on *voir dire* examination, it must not be forgotten that the law and the authorities are to the effect that liability insurance companies may be sued directly for the balance of any judgment not recoverable from the individual, and, the mode of highway travel by automobile having already become a universality, the tendency of the courts upon questions like the one at bar, is to give counsel reasonable and proper latitude in ascertaining the qualifications of jurors with respect to their interest as stockholders or otherwise in liability insurance companies."

Under these authorities, we do not find that the court committed any prejudicial error, or that the court below was guilty of abuse of sound discretion. There are numerous other authorities which could be cited, as the time is rapidly approaching, according to the trend of authorities, when the question under discussion will be beyond the pale of dispute.

If we are wrong about this proposition, however, there is one fact in the record that disposes of the ground of error with respect to abuse of discretion, because it is not, and cannot be prejudicial, for the reason that the record shows that no objection or exception was made to the interrogatories until after the jury had been sworn, as will appear by the following excerpt from the record:

"Mr. McMahon: No challenge for cause.

"Mr. Howland: No challenge for cause.

"The Court: Any peremptories for the defense?

"Mr. Howland: Still satisfied, your honor.

"Mr. McMahon: The plaintiff is satisfied with the jury.

"The Court: You may arise and be sworn, ladies and gentlemen of the jury.

"And at 1:58 o'clock p. m., the jury was sworn by the clerk."

This colloquy from the record is, in our judgment, a complete waiver of the character of the interrogatories complained of and as to the conduct of counsel for plaintiff below, but, as before stated, we think there is no question about the legal right of the plaintiff to ask the question, for the reason that there is nothing in connection therewith to show bad faith.

The second ground of error is that there was passion and prejudice on the part of the jury. In the absence of any other testimony, this situation could only appear from the size of the verdict, inasmuch as there was a waiver of the charge of misconduct as to the character of the interrogatories just discussed.

It is sufficient for us to say that we have exam-

ined the record as to the injuries received, the medical testimony bearing thereon, together with the testimony of the plaintiff, and we are clearly of the opinion that the injuries were severe and serious, and that the verdict itself, based upon the injuries detailed, does not indicate passion and prejudice. The minor was confined to her bed in the hospital for eight days, and was there one day more, but not confined to the bed. In addition, following that, she was confined about three weeks to her home. She was injured on various portions of her body by bruises and contusions, and the pupil of one of her eyes, by reason of a scalp wound, was greatly increased in size, making a contrast between the injured eye and the other one. There was a fracture of the elecranon process of her left elbow. At St. Luke's Hospital the plaintiff's left arm was placed in splints, which necessarily indicated a fracture. Dizzy spells, nervousness, headaches were consequences, as shown by the record of the injury, and, taking the entire record of her injuries into account, the irresistible conclusion follows that the judgment was not excessive by reason of passion, prejudice, or any other cause arising out of the record. Therefore we hold there is no prejudicial error as to the second ground.

The third ground of error charges that the court erred in its instructions to the jury. Excerpts from the charge are selected, but, of course, in order to determine whether they are prejudicial, they are to be considered with the remaining portions of the charge, because it is well-settled law that the charge must be taken as a whole, and not by sentence, paragraph, or excerpt.

It is contended that the court erred in using the following language:

"If the negligence of the plaintiff merely put her in a place of danger, and her negligence did not continue until the moment of the injury, and the defendant either knew of her danger, or by the exercise of ordinary diligence would have known of the danger, then plaintiff's negligence did not concurrently combine with the defendant's negligence to produce the injury, and defendant's negligence in such case would be the proximate cause, but if the plaintiff was guilty of failure to observe ordinary care for her own safety up to and at the very moment of her injury, and the defendant by the exercise of ordinary care could not have observed, and did not learn and know of plaintiff's danger until he was so near the plaintiff that by the exercise of ordinary care he was unable to avoid injuring her, then your verdict in that case should be for the defendant."

While the court used the above language, he also charged the jury as follows, which clearly shows that the court intelligently defined the responsibilities under the law resting upon both parties in a situation such as shown by the record:

"Equality of right in this case required that both the driver of the automobile (that is, the defendant) and the plaintiff in crossing the street should have exercised ordinary care under the circumstances. It was the duty of both parties in this case to have exercised their faculties of sight and hearing, the plaintiff for passing vehicles or automobiles, and for her own protection, and the defendant for pedestrians in crossing the street. Both had the

right of way, and both were required to be cautious and to exercise that degree of care which the case demands.   Both were bound to observe ordinary care to avoid the accident or collision.''

While the court partially touched upon the doctrine of last clear chance, yet we think from a reading of the entire charge upon that subject that the portion of the charge excepted to is tantamount to finding the duties of the parties at bar, under the circumstances as detailed by the record.   The doctrine of last clear chance applies where both parties concur in the negligence, and, one party ceasing to be negligent, the other party inflicts the injury, when, by the exercise of ordinary care under the particular circumstances, he could, as a last chance, have prevented the injury.   That doctrine is not laid down in the charge in such a manner as to designate it the doctrine of last chance, and we think from a reading of this portion of the charge that it was only incidentally referred to in order to explain the responsibilities as to the exercise of ordinary care common to both parties under the record in the case.   The exercise of ordinary care is required up until the last moment, and this proposition in and of itself, in a sense, involves the doctrine of last chance, because the exercise of ordinary care is an unbroken continuity, ending only with the culmination of the circumstances.

Counsel for plaintiff in error takes exception to the following excerpt of the charge:

''It was the duty of the defendant in driving his automobile to have observed ordinary care such as would have enabled him to observe the danger to

the plaintiff, whether plaintiff was prudent or careful, or whether the plaintiff was neglectful in observing the car of the defendant as it was passing along the street and approaching her.''

We do not think, from an examination of the whole charge and record, that there was prejudicial error in this instruction. It will be observed that after all it was ordinary care which the court was instructing the jury that the defendant, while driving his automobile, should exercise. The clause, ''such as would have enabled him to observe the danger to the plaintiff,'' means no more than such exercise of ordinary care as would have observed the situation of the plaintiff, and, whether plaintiff was prudent or careful or whether she was neglectful in observing the car, did not excuse the defendant from exercising ordinary care in these respects, as the action or conduct of plaintiff is not the rule by which is determined the question of ordinary care on the part of the defendant.

He also takes exception to the following charge:

''A driver of an automobile in the streets of a city must observe, and this defendant should have observed, such watchfulness as ordinary care and prudence demands for footmen, that is, pedestrians or travelers in the street, and must have his machine under ordinary control, and must take such steps in the handling of the car as ordinary care and prudence in such case demands, as will enable him to avoid injury to others who have equal rights in the streets.''

It is claimed that the terms ''must observe'' and ''should have observed'' were prejudicial, in that their use was equivalent to charging that the de-

fendant did not observe; in other words, equivalent to an accusation by the court upon the facts. We do not think this construction is to be reasonably interpreted from the language. We think that the import of the language, giving it a reasonable construction, is that it was the duty of the driver of the automobile to exercise ordinary care in his observance; and, by saying that he should have observed, the court implies a duty, and does not determine a fact or make an accusation of misconduct.

We must bear in mind all the time that the tribunal known as a jury is presumed to be capable of determining for itself the essential elements of facts as they appear from the record, and upon which instructions by the court are given. It will not do to eliminate the presumption of ordinary intelligence on the part of the jury. It is a common error in construing instructions of a court to assume a jury is not capable of interpreting ordinary language and the common facts appearing in the record. We have no doubt that the jury in this case understood that the court was defining, in ordinary language, the legal duties which the law assigns to the parties in an automobile collision. The creation of a jury as a tribunal by the Constitution makes logical the presumption that that body must be given the credit for having the intelligence of the average twelve men selected from the body politic; and particularly so when the twelve men are chosen by the process of the law to sit as a tribunal to try the facts arising in judicial procedure.

It is our judgment that there is no error of a prejudicial nature to plaintiff in error in the rec-

ord, and, thus holding, the judgment of the court of common pleas is affirmed.

*Judgment affirmed.*

VICKERY and LEVINE, JJ., concur.